UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**GOSPEL MINISTRIES INTERNATIONAL, INC.**

    **Plaintiff**

v.                                                         Cause No. _____

**PREMIER PROPERTY SALES, LTD.,
CLAY CHESTER, Individually and as President of
PREMIER PROPERTY SALES, LTD.,
DYLAN STORMONT, Individually,
DEWAYNE'S AIRCRAFT SERVICES, LLC,**

    **Defendants.**

## COMPLAINT FOR NEGLIGENCE, NEGLIGENCE PER SE, INTENTIONAL TORT, AND BREACH OF CONTRACT

**COMES NOW** Plaintiff Gospel Ministries International, Inc. (hereinafter referred to as "GMI"), by and through its attorneys, Hinkle Shanor LLP (Stephen S. Shanor), and as and for its Complaint against Premier Property Sales, Ltd. ("PPS"), Clay Chester, individually and as president of PPS, Dylan Stormont, individually, and Dewayne's Aircraft Services, LLC, would show this Court as follows:

### THE PARTIES

1. GMI is a Tennessee Non Profit Corporation with its principal place of business in the State of Tennessee.

2. PPS is an Ohio limited liability company with its principal place of business in the state of Ohio. PPS is a single member LLC, and the member of the LLC is an Ohio resident.

3. Defendant Clay Chester ("Chester") is a resident of the State of Ohio.

4. Defendant Dylan Stormont ("Stormont") is a resident of the State of Ohio.

5. Dewayne's Aircraft Services, LLC ("DAS") is an Ohio limited liability company, and is a single member LLC, and upon information and believe Dylan Stormont is the only member of the LLC and is a resident of the State of Ohio.

6. Defendants PPS and Chester transacted business in the State of New Mexico to purchase aircraft belonging to Plaintiff GMI located in the state of New Mexico.

7. The actions of all Defendants giving rise to the tort claims occurred in New Mexico.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

9. There is complete diversity of citizenship as to all parties and the amount in controversy exceeds the sum of $75,000, inclusive of interest and costs.

10. The claims at issue in this action arose in the District of New Mexico, and therefore venue is proper in this Court pursuant 28 U.S.C. §1391.

## GENERAL ALLEGATIONS

11. GMI uses aircraft to provide missionary work and medical support to remote areas around the world.

12. In August of 2020, GMI sold one of its aircraft, a Cessna 414, to Stormont on a Lease to Purchase Agreement, a copy of which is attached hereto as **Exhibit 1.**

13. Sometime thereafter, Stormont contacted GMI inquiring as to whether they had another aircraft that might be available for a Lease to Purchase as Stormont had a client that might be interested in an aircraft.

14. GMI did in fact have a second aircraft, a Cessna 425 that was available for purchase.

15. The Cessna 425 is and was at all times material hereto physically located in Gallup, New Mexico.

16. Stormont coordinated with his client, Chester, President of PPI, to schedule a visit to Gallup, New Mexico to inspect the Cessna 425.

17. Stormont and Chester traveled to Gallup, New Mexico to inspect the Cessna 425.

18. At the time of the inspection, the Cessna 425 did not have any engines on the aircraft, nor was there an interior to the aircraft.

19. Chester, on behalf of PPS, negotiated and signed a Lease to Purchase Agreement for the Cessna 425 from GMI (the "Agreement"). A copy of the Agreement is attached hereto is **Exhibit 2.**

20. PPS tendered $90,000 as the initial deposit in payment towards the Lease to Purchase Agreement.

21. GMI accepted the payment of the initial deposit.

22. On September 21, 2020, the aircraft's engines arrived via Federal Express delivery truck.

23. As the aircraft's engines were installed onto the Cessna 425, the left prop hub was damaged to a point that repair was necessary.

24. Plaintiff GMI communicated with Chester as officer and agent for PPS and notified him of the issue and the need for the repair.

25. On October 14, 2020, the left prop hub repair was completed and delivered to the Gallup Airport by New Mexico Propeller.

26. The prop was installed by Nelson Chee, I.A. ("Chee").

27. On October 28, 2020, Brandtley Greenlaw ("Greenlaw"), agent for GMI arrived in Gallup, along with Chee and attempted to start the engines on the Cessna 425.

28. At that time, the Ng gauges did not show any indication.

29. Chee began to troubleshoot to determine why the Ng gauges would not work.

30. On October 29, 2020, Greenlaw of GMI advised Chester on behalf of PPS that Chee was continuing to troubleshoot to identify the cause for the Ng gauges not working and to advise him that new gauges had been ordered. Greenlaw also advised Chester that the Cessna 425 was not ready for him to pick up and Chester replied he was coming out anyway.

31. On October 30, 2020, Stormont and Chester on behalf of PPS arrived at the Gallup Airport.

32. Greenlaw on behalf of GMI advised Chester on behalf of PPS that the Cessna 425 was not yet ready and that they would have to wait until the repairs were completed.

33. On October 31, 2020, Chester and Stormont, went to the airport property for the stated purpose of overseeing and observing the troubleshooting process. While on the scene, Defendants attempted to hotwire the gauges and start the engine. When Chester and Stormont attempted to hotwire the gauges and start the engines, they did so outside of the presence of or under the supervision of Chee which was contrary to the express instructions given to them by GMI.

34. In the course of hotwiring the gauges and attempting to start the engines, the left engine was burned from the inside out, was significantly damaged and became inoperable.

## COUNT 1 – NEGLIGENCE

35. GMI adopts and incorporates the allegations in paragraphs 1-34, as if fully set forth herein.

36. The actions of Defendants Chester and Stormont, individually and on behalf of Defendant PPS to hotwire the gauges and start the engine was not done in a safe and prudent manner and was done contrary to the express instructions in the Pilot's Operating Handbook.

37. Defendants' action fell below the applicable standard of care and constitute negligence.

38. GMI, who is still the owner and was in possession of the Cessna 425 suffered damages as a result of Defendants' negligence.

39. These damages were proximately caused by the negligence on the part of Defendants. .

40. As a direct and proximate result of the negligence on the part of Defendants, GMI has incurred damages and is entitled to damages, including the costs including repair of the engine, which exceeds $140,000.

**WHEREFORE** GMI respectfully requests that this Court enter judgment in its favor, for compensatory damages in an amount to be proven at trial and such other and further relief as the Court deems proper.

### COUNT 2 – NEGLIGENCE PER SE

41. GMI adopts and incorporates the allegations in paragraphs 1-40, as if fully set forth herein.

42. The Federal Aviation Administration ("FAA") conducted an investigation into the activities of the Defendants after their attempt to hotwire the engine.

43. The FAA investigation substantiated the allegation that the Ng gauge being operated after it had been removed from the panel, was opened and improperly wired to the left

engine's Tach Generator. Further, they determined that the compression rotation speed indicator (Ng Gauge) was opened by a non-licensed and non-certified technician.

44. This action on the part of the Defendants was contrary to FAA regulations and standards and contrary to the express instructions in the initial Pilots' Operating Handbook.

45. The actions by the Defendants constitute negligence per se.

46. As a result of the Defendants' actions which constitute negligence per se, the Plaintiff was damaged in an amount to be proven at trial.

**WHEREFORE** GMI respectfully requests that this Court enter judgment in its favor, for compensatory damages in an amount to be proven at trial and such other and further relief as the Court deems proper.

**COUNT 3 – INTENTIONAL TORT**

47. GMI adopts and incorporates the allegations in paragraphs 1-46, as if fully set forth herein.

48. Defendants PPS, Chester and Stormont did not have permission to work on the Cessna 425 engine and/or attempt to hotwire or start the engine on the Cessna 425 without Chee being present and in fact were expressly instructed not to.

49. Defendants' actions amount to a conversion, and/or a trespass which the Defendants intentionally undertook by intermeddling with a chattel in the possession of GMI having no privilege to do so.

50. Defendants' actions constitute the tort of Intentional Invasion of Interest of a Chattel and/or Trespass and Conversion.

51. Defendants are strictly liable for the damages as a result of this intentional Tort.

52. GMI has been damaged by Defendants' intentional acts, including but not limited to the costs of repairs for the engine which exceed $140,0000.

**WHEREFORE** GMI respectfully requests that this Court enter judgment in its favor, for compensatory damages in an amount to be proven at trial and such other and further relief as the Court deems proper.

## COUNT 4 – BREACH OF CONTRACT

53. GMI adopts and incorporates the allegations in paragraphs 1-52, as if fully set forth herein.

54. PPS entered into a Lease with an option of Purchase with GMI, see **Exhibit 2.**

55. Under the terms of the Agreement, PPS was to make certain payments, including a down payment in the amount of $90,000 and monthly payments in the amount of $7,500 each and every month for 18 months.

56. PPS has defaulted on the monthly payments and remains in default.

57. Additionally, PPS was to maintain insurance on the Cessna 425 having GMI named as an additional insured on the policy.

58. Upon information and belief, PPS has failed to secure and maintain insurance as required by paragraph 3 of the Agreement, and therefore are and remain in breach of the Agreement. See **Exhibit 2**.

59. As a result of PPS's breach of the Agreement, GMI has been damaged and is entitled to all remedies available at law.

**WHEREFORE,** GMI respectfully requests that this Court enter judgment in its favor, for compensatory damages in an amount to be proven at trial and such other and further relief as the Court deems proper.

## COUNT 5 – BREACH OF CONTRACT AGAINST DAS

60. GMI adopts and incorporates the allegations in paragraphs 1-59, as if fully set forth herein.

61. DAS entered into a Lease with an option of Purchase with GMI, see **Exhibit 1**.

62. Under the terms of the Agreement, DAS was to make certain payments, including a down payment in the amount of $15,000 and monthly payments in the amount of $1,903.88 each and every month for 18 months.

63. DAS has defaulted on the monthly payments and remains in default.

64. Additionally, DAS was to maintain insurance on the Cessna 414 having GMI named as an additional insured on the policy and never provided this coverage.

65. As a result of DAS's breach of the Agreement, GMI has been damaged and is entitled to all remedies available at law.

**WHEREFORE,** GMI respectfully requests that this Court enter judgment in its favor, for compensatory damages in an amount to be proven at trial and such other and further relief as the Court deems proper.

Trial by Jury is requested.

Respectfully Submitted

**HINKLE SHANOR LLP**

<u>/s/ Stephen S. Shanor</u>
Stephen S. Shanor
P.O. Box 10
Roswell, NM  88202-0010
575-622-6510 / 575-623-9332 Fax
ssshanor@hinklelawfirm.com
*Attorneys for Plaintiff*