UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GOSPEL MINISTRIES INTERNATIONAL, INC.,

    Plaintiff,

v.	1:21-cv-00566-MV-JMR

PREMIER PROPERTY SALES, LTD.,
CLAY CHESTER, individually and as president of
Premier Property Sales, Ltd.,
DYLAN STORMONT, individually,
DEWAYNE'S AIRCRAFT SERVICES, LLC,

    Defendants,

and

PREMIER PROPERTY SALES, LTD.,

    Counter Claimant,

v.

GOSPEL MINISTRIES INTERNATIONAL, INC.,

    Counter Defendant

and

PREMIER PROPERTY SALES, LTD.,

    Third-party Plaintiff,

v.

DAVID GATES, individually and as president of
Gospel Ministries International, Inc. and
BRANDTLEY GREENLAW, individually and as
chief pilot for Gospel Ministries International, Inc.,

    Third-party Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

1

THIS MATTER comes before the Court on Premier Property Sales, Ltd.'s ("Premier's") Motion to Amend its Pleading to Add Cross Claims, filed on December 4, 2022. Doc. 55. Premier is a defendant, counterclaimant, and third-party plaintiff in this action. Plaintiff and counter-defendant Gospel Ministries International, Inc. ("Gospel Ministries") filed a response to the motion to amend. Doc. 58. Premier filed a reply. Doc. 60.

Relatedly, the Court issued two orders to show cause due to Premier's failure to serve third-party defendants Brandtley Greenlaw and David Gates—two of the third-party defendants against whom Premier seeks to amend its claims. Docs. 71, 72; *see also* Doc. 55. Premier failed to respond to the first order to show cause. Premier did respond to the second. Doc. 73. Gospel Ministries filed a memorandum in opposition of Premier's response. Doc. 74.

The Honorable Senior District Judge Martha Vázquez referred the matter to me pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition of this case. Doc. 75. Having reviewed the submissions of the parties and the relevant law, I conclude that Premier has not shown good cause to amend its pleading. Therefore, I recommend the Court DENY Premier's Motion to Amend its Pleadings to Add Cross Claims (Doc. 55). I further recommend the Court dismiss Mr. Greenlaw and Mr. Gates without prejudice due to Premier's failure to timely serve them.

**I.   Facts**

This case arises from a lease-to-purchase sale of a Cessna 425 airplane from Plaintiff Gospel Ministries to Defendants Dylan Stormont and his client Clay Chester, the president of Premier. Doc. 1. Gospel Ministries filed its complaint on June 18, 2021. *Id.* On July 23, 2021, Premier filed an answer, counterclaim, and third-party complaint. Doc. 6. Plaintiff Gospel

Ministries answered the counterclaim against it. Doc. 13. Premier never served third-party defendants Mr. Gates and Mr. Greenlaw with its third-party complaint against them.[1] Mr. Gates is the president of Gospel Ministries. Doc. 58 at 2. Mr. Greenlaw is the chief pilot for Gospel Ministries. *Id.*

The heart of the parties' dispute is who damaged the Cessna 425's left engine. Gospel Ministries accuses defendant Clay Chester of causing the engine damage by hotwiring the plane in an attempt to fix it. Doc. 1 at 4. On the other hand, Premier claims, in its proposed amended counterclaim and third-party complaint, that the engine damage was caused during maintenance by Kyle Kennedy, a NW Aerotech employee hired by Gospel Ministries. Doc. 55-1 at 7–8. Premier further accuses Mr. Greenlaw of conspiring to blame Mr. Chester for the damage allegedly caused by Mr. Kennedy. *Id.* Finally, Premier claims that it only discovered that the engine damage was caused by Mr. Kennedy after an expert witness processed information obtained during discovery. Doc. 55 at 3–5.

**II.     Relevant Dates**

On December 15, 2021, Magistrate Judge Jerry H. Ritter entered a scheduling order in this case. Doc. 23. Judge Ritter set a deadline of January 15, 2022 for Premier to amend its pleadings and a deadline of February 1, 2022 for Premier to add additional parties. *Id.* at 2. Both deadlines were set as requested by the parties. Doc. 21 at 3.

The exact date Premier received the information it needed to amend its counterclaim and third-party complaint is unclear from the briefing. Premier concedes that it received the discovery it needed to amend its pleading by June 10, 2022. Doc. 60 at 4. Although, Premier also received discovery from Gospel Ministries on February 7, 2022, February 16, 2022, and March

---

[1] *See infra* section IV for a more detailed discussion on Premier's failure to serve.

3

4, 2022. Doc. 55 at 2. On July 13, 2022, the Court held a status conference. Doc. 48. At that status conference, both parties agreed that expert discovery information necessitated adding new parties. *Id.* Judge Ritter reminded the parties that "the deadline to move to amend pleadings without leave of the Court ha[d] lapsed." *Id.* Judge Ritter also reminded the parties that the legal standard for amending a scheduling order requires "a showing of good cause and diligence under the relevant rules." *Id.*

At the status conference, Premier's counsel stated that he would file an unopposed motion for a forty-five-day extension of the discovery and pre-trial motions deadlines to permit briefing of a motion to amend. *Id.* On July 15, 2022, Premier filed an Unopposed Motion for Extension of Time to Complete Discovery. Doc. 49. While the motion mentioned a forthcoming motion to amend pleadings, it did not request that the deadline to amend pleadings be extended. *Id.* Judge Ritter granted the forty-five-day discovery extension. Doc. 50. On September 8, 2022, the parties filed another motion to extend the discovery and pretrial motions deadlines by forty-five days. Doc. 51. Judge Ritter granted the motion. Doc. 52. On November 29, 2022, the parties filed a third motion to extend the discovery and pretrial motions deadlines—this time by ninety days. Doc. 54. Judge Ritter granted the motion and amended the deadlines relating to close of discovery, pretrial motions, and pretrial orders. Doc. 57. None of the three motions to extend requested that the deadline to amend pleading be extended.

On December 4, 2022, Premier filed the instant motion to amend the third-party complaint and counterclaim. Doc. 55. Premier's motion to amend is over ten months late. *See* Doc. 23 (setting the deadline to amend pleadings as January 15, 2022 and the deadline to add additional parties as February 1, 2022). Premier's motion was filed approximately five months after Premier told the Court that it would be filing a motion to amend its pleadings based on

4

information it received in discovery. *See* Doc. 48 (Clerk's Minutes from the July 13, 2022, status conference).

### III. The Motion to Amend

In Premier's Motion to Amend its Pleading to Add Cross Claims, it moves to amend its "answer and crossclaim [sic]" based on information it uncovered in discovery. Doc. 55 at 2. According to the motion, Premier seeks to amend its third-party complaint against Mr. Greenlaw, chief pilot of Gospel Ministries. *Id.* at 3. Premier also seeks to add two parties: NW Aerotech, LLC and Kyle Kennedy, its employee. *Id.* Premier claims that through discovery, as processed by an expert witness, it learned that Mr. Kennedy caused the damage to the plane engine that Mr. Chester is accused of causing. Doc. 55 at 3–5. Premier accuses Mr. Greenlaw of setting up Mr. Chester to blame him for the damage. *Id.*

Strangely, Premier's proposed amendments substantially exceed the amendments discussed in its motion. *See* Doc. 55-1 (Premier's proposed amended third-party complaint and counterclaim). For instance, in the proposed amended counterclaim and third-party complaint, Premier adds claims against unserved, third-party defendant Mr. Gates, including accusing him of conspiracy. Doc. 55-1 at 13–18. Premier does not mention Mr. Gates in its motion to amend, and Mr. Gates has not had an opportunity to weigh in on the motion. Premier also expands its counterclaims against Gospel Ministries but offers no basis for this expansion in its motion. *Id.* Premier further alters material dates in the proposed amended pleading without explanation. Doc. 55-1 at 5, 8. Premier also adds a breach of contract claim, which closely resembles its existing breach of contract claim, and is wholly unrelated to the information learned through discovery, Premier's stated basis for amendment. *Id.* at 9, 16–17. Finally, Premier includes a negligent hiring claim against NW Aerotech and Mr. Kennedy but fails to allege facts to sustain such a

5

claim. Doc. 55-1 at 13. Inexplicably, Premier's proposed amended counterclaim and third-party complaint greatly exceeds the scope of what it actually argues in its motion.

I decline to address the addition or expansion of claims not argued by the moving party. *See Hardiman v. Reynolds*, 971 F.2d 500, 502 (10th Cir. 1992) (quoting *United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring) (citation omitted)) ("The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one."). Indeed, a motion to amend should address each and every amendment and certainly does not give Premier *carte blanche* to alter its pleading.

### a. Legal Framework

Federal Rule of Civil Procedure 16(b)(3)(A) requires the Court to set a deadline to amend the pleadings. That deadline can only be changed for "good cause." FED. R. CIV. P. 16(b)(4). To demonstrate "good cause," the movant must show that the "scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (internal citation and quotation omitted). Good cause may be satisfied when a party "learns new information through discovery." *Id.* Yet, "[i]f the plaintiff knew of the underlying conduct but simply failed to raise [the] claims, however, the claims are barred." *Id.* Further, if a party fails to adequately explain a delay in filing a motion to amend, they fail to show the diligence required for good cause. *Husky Ventures, Inc. v. B55 Investments, Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018).

An extended delay between discovering the need to amend a pleading and filing a motion to amend can demonstrate the movant's lack of diligence. *See Tesone v. Empire Marketing Strategies*, 942 F.3d 979, 990 (10th Cir. 2019). In *Tesone*, the Tenth Circuit affirmed the denial

of a plaintiff's motion to amend her complaint ten months after the deadline to amend pleadings had passed. *Id.* Tesone alleged that she had discovered new information, which necessitated amendment, but the Tenth Circuit found that she failed to show "good cause" because of the months-long delay between discovering that she needed to amend her complaint and filing the motion to amend. *Id.* at 991. Similarly, in *Birch*, the Tenth Circuit affirmed a denial of a motion to amend a complaint when the movant failed to explain a four-month delay from the discovery of new information to filing a motion to amend. *Birch v. Polaris Industries, Inc.*, 812 F.3d 1238, 1248–49 (10th Cir. 2015). While tardiness alone does not justify a denial of a motion to amend, failure to demonstrate diligence after discovery of new information may. *Id.*

In addition to demonstrating "good cause" for missing a scheduling order deadline under Federal Rule of Civil Procedure 16(b), a party seeking leave to amend must also satisfy Federal Rule of Civil Procedure 15(a).[2] *Gorsuch*, 771 F.3d at 1240. Rule 15(a) provides two routes for a party to amend:

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course no later than:
> > (A) 21 days after serving it, or
> > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

---

[2] Some courts also analyze requests for motions to amend pleadings after the deadline has passed under a third standard—Federal Rule of Civil Procedure 6(b)'s "excusable neglect" standard. The Tenth Circuit disapproves of Rule 6's applicability to this situation. *Birch v. Polaris Industries, Inc.*, 812 F.3d 1238, 1249 n.2 (10th Cir. 2015) (noting that it was harmless legal error for a magistrate judge to apply the Rule 6 standard in addition to Rules 16(b) and 15(a) when deciding a motion to amend pleadings after the deadline).

FED. R. CIV. P. 15(a). "The purpose of the Rule is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

Rule 16(b)'s "good cause" standard is generally more stringent than Rule 15(a)'s "justice so requires" standard. *Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009). While Courts have noted a "rough similarity" in the two standards, *id.*, unlike Rule 15(a), Rule 16(b) does not focus on bad faith or the prejudice to the opposing party. *Pumpco, Inc. v. Schenker, Intern., Inc.*, 204 F.R.D. 667, 668 (D. Colo. Dec. 18, 2001). If a party fails to show "good cause" under Rule 16(b), courts need not assess whether Rule 15(a) is satisfied. *Tesone*, 942 F.3d at 990 (collecting cases).

Here, Premier fails to show good cause for filing its motion to amend over ten months after the deadline to amend pleadings.

### b. Premier fails to show good cause for filing its motion to amend over ten months late.

Premier argues that its amended counterclaim and third-party complaint "was done as soon as feasibly possible." Doc. 60 at 7. Premier states that it did not receive the discovery required to amend its complaint until June 10, 2022. *Id.* at 4. Premier explains the subsequent delay was consumed by consulting with its expert witness and trading drafts of the amendment with opposing counsel. *Id.* By the July 13, 2023, status conference, Premier knew that it needed to file a motion to amend the complaint. Doc. 48. On August 10, 2022, Premier disclosed its expert witness report to opposing counsel, meaning that the expert report was completed by that date at the latest. Doc. 58 at 2. Premier's motion to amend was then not filed until December 4, 2022. Doc. 55. Gospel Ministries argues that Premier has not demonstrated "good cause" for its

delay in filing a motion to amend. *Id.* at 4–5. Gospel Ministries states, "Assuming, *arguendo*, [Premier] needed its expert's input to set forth some of its proposed amendments, it provided no explanation for waiting another four months before filing this motion, or how it knew its counterclaim needed amendment and parties needed [to be] added a month before the expert report was completed." *Id.* at 6. I agree with Gospel Ministries.

While Premier accounts for some of its delay, it fails to account for all of it. The deadline for Premier to move to amend its pleadings was January 15, 2022. *See* Doc. 21 at 3. The deadline to add parties was February 1, 2022. *Id.* Premier filed its motion to amend over ten months late, on December 4, 2022. Doc. 55; *see Birch*, 812 F.3d at 1248–49 (affirming denial of a motion to amend eleven months after the amendment deadline and four months after discovery of new information). Since the outset of this case, Premier was aware that it would need to amend its counterclaim and third-party complaint. Doc. 21 at 13 (Premier "intends to file: . . . Motion to Amend the Pleadings to add parties."). Still, due to discovery delays, Premier did not have the information it needed to amend the counterclaim and third-party complaint until June 10, 2022, at the latest. Doc. 60 at 4. Nevertheless, Premier's motion to amend came at least six months *after* the discovery of new information.

Premier offers two explanations for the subsequent six-month delay in filing a motion to amend. First, Premier asserts that its expert witness needed to process the discovery due to the technical nature of the information. *Id.* at 2–3. Second, Premier asserts that it was trading drafts of an amended counterclaim and third-party complaint with opposing counsel in an attempt to obtain his concurrence. *Id.* at 3. Neither excuse, even when taken together, justifies the minimum six-month delay from obtaining the information needed to amend the complaint and filing a motion to amend. *See Husky Ventures, Inc.*, 911 F.3d at 1020 ("The record—which indicates that

9

[movants] knew of the allegedly 'new' information months before the motion to amend—fatally undercuts their ability to demonstrate good cause.").

As to Premier's first justification, it is unreasonable to attribute the lengthy delay to Premier's expert witness processing discovery. Surely, some delay in processing discovery is reasonable as this case involves a technical matter—the mechanical failure of a plane engine. Yet, by July 13, 2022, Premier was sufficiently aware that another party might be liable for the engine damage. Doc. 48. And by August 10, 2022, the expert witness had completed and written their analysis. Doc. 58 at 4. Premier argues it "was doing its due diligence to ensure it had a good faith basis to make each allegation in the amendments." Doc. 60 at 4. But Premier, like the movant in *Tesone*, fails to provide adequate details. *See Tesone*, 942 F.3d at 991. Premier does not clarify whether it needed further information to amend its complaint after the July 13, 2022, status conference. Premier does not argue that discovery in this case was unusually voluminous. Premier does not argue that its expert witness needed to further analyze discovery after completing the expert report. Overall, Premier fails to demonstrate that it made diligent efforts to file a timely amendment to its pleading based on consulting with its expert witness. *See Birch*, 812 F.3d at 1248–49 (affirming denial of a motion to amend when the movant failed to explain a four-month delay in filing after discovering new information).

The second explanation for the six-month delay is that Premier was revising its amended counterclaims and third-party complaint to obtain opposing counsel's concurrence. Doc. 60 at 3. In total, Premier exchanged just two drafts of the amended pleading with opposing counsel. *Id.* at 4. Premier does not supply a timeline for when it provided these drafts. Premier does not claim that opposing counsel took an unreasonable length of time to review these drafts and does not sufficiently explain why the exchanging of two drafts of this amended pleading would have

caused a months-long delay. This exchange of drafts, in addition to the time it took for the expert witness to process discovery, simply does not sufficiently explain the six-month delay from discovery of the information to filing the motion to amend. *See again Birch*, 812 F.3d at 1248–49.

Generally, discovery of new information would be grounds to find good cause to amend the pleadings. *See Pumpco*, 204 F.R.D. at 668–69. Yet here, the inadequately explained, extended delay after Premier learned of the new discovery information demonstrates a lack of diligent effort to meet the scheduling order deadlines. *See Tesone*, 942 F.3d at 991.

Further illustrating a lack of diligence, Premier failed to file a motion to extend the deadline to amend the pleadings. At the July 13, 2022, status conference, Premier told the Court that it would be filing a motion to amend its pleading. Doc. 48 ("Mr. Dolan intends to move to amend his client's pleading to join additional parties and state a crossclaim."). The Court even reminded Premier of the applicable legal standard. *Id.* ("Judge Ritter noted that the deadline to move to amend pleadings without leave of the Court has lapsed, requiring a showing of good cause and diligence under the relevant rules."). Two days later, Premier moved to extend "all discovery deadlines and related motions," and neglected to request that the deadline to amend pleadings be extended. Doc. 49. Judge Ritter granted the motion by a proposed order, which was submitted and approved by the parties. Doc. 50. The parties have since extended the discovery and pretrial motion deadlines two more times without mention of the deadline to amend pleadings. Doc. 52; Doc. 57. And when Premier finally requested to extend the deadline to amend pleadings, here, Premier failed to even make the fundamental argument—that there was "good cause" under Rule 16—until its reply brief. Doc. 55; Doc. 60 at 2–3.

Premier fails to demonstrate good cause for amending its counterclaim and third-party complaint after the scheduling order deadline has passed and so long after discovery of the new information.

      **c.**      **Premier will not be irreparably harmed by the denial of this motion.**

Premier will not be irreparably harmed by denial of its motion. Premier argues that if it is not permitted to amend its pleading, "it will suffer irreparable harm at trial being forced to use an 'empty chair' defense." Doc. 55 at 5. The Court is not required to consider harm to the movant in analyzing "good cause" under Rule 16. Even if the Court were to consider it, Premier fails to show it would be harmed by the denial of its motion to amend.

First, Premier fails to explain how it will be prejudiced by the availability of an "empty chair" defense. In many cases, defense attorneys consider the availability of an "empty chair" defense to be a positive. *See, e.g.*, Joshua Kahn & Daniel Adamson, *Don't Show Up Empty-Handed When Using the "Empty Chair" Defense*, 19 MASS TORTS LITIGATION 2 (2021). Afterall, an empty chair cannot defend itself from blame. Even if this motion is denied, Premier is still free to pursue its theory that Gospel Ministries' agents conspired to frame Mr. Chester in this litigation. And Mr. Gates, Mr. Greenlaw, and Mr. Kennedy can still be deposed and called as witnesses in this litigation, even if they are not joined as parties.

Second, and more importantly, Premier can still seek complete relief. As Premier acknowledges, if Mr. Greenlaw and Mr. Gates are dismissed, Gospel Ministries "as their employer is liable for their actions and the allegations would remain the same." Doc. 60 at 6. Premier's existing counterclaims against Gospel Ministries are sufficiently broad so as to entitle Premier to relief if its allegations are proven true. *See, e.g.*, Doc. 6 at 17–18 (accusing Gospel Ministries of unconscionable trade practices and unjust enrichment). As to Mr. Kennedy and NW

Aerotech, Premier has not argued that the statutes of limitations has passed for any of the claims against Mr. Kennedy or NW Aerotech and has not explained why it would not be able to pursue claims against them in a separate lawsuit.

Premier will not be irreparably harmed by denial of this motion to amend.

### d. The Court need not decide whether Rule 15(a) is satisfied.

Because I find that Premier failed to show "good cause" to amend the scheduling order under Rule 16(b), I need not address whether Premier satisfies the Rule 15(a) requirements. *Tesone*, 942 F.3d at 990. Therefore, I decline to address the parties' briefing on the Rule 15(a)(2) "justice so requires" factors—undue delay, bad faith, prejudice to the non-movant, and futility of amendment—except to the extent the arguments apply to a showing of Rule 16(b) good cause. *See, e.g.*, *Minter*, 451 F.3d at 1204 (citations omitted).

For the above reasons, I recommend that the Court deny Premier's Motion to Amend Its Pleadings to Add Cross Claims (Doc. 55).

## IV. Unserved Third-Party Defendants

Premier filed its original counterclaim and third-party complaint (Doc. 6) on July 23, 2021. Service of the third-party defendants was due on October 21, 2021. *See* FED. R. CIV. P. 4(m). Yet, to date, Premier has not served the original third-party defendants, Mr. Gates and Mr. Greenlaw. Attorneys for Gospel Ministries have repeatedly and unequivocally stated that they do not represent Mr. Gates and Mr. Greenlaw. Doc. 13 at 2 n.1; Doc. 58 at 2 n.1; Doc. 74 at 2.

On June 16, 2023, the Court issued an Order to Show Cause regarding Premier's failure to serve Mr. Gates and Mr. Greenlaw. Doc. 71. Premier was ordered to respond by June 30, 2023, "to avoid dismissal of the claims against third-party defendants Brandtley Greenlaw and David Gates." *Id.* at 3. Premier did not respond. On July 3, 2023, the Court issued a second

13

Order to Show Cause regarding Premier's failure to respond to the first Order to Show Cause and its failure to serve Mr. Greenlaw and Mr. Gates. Doc. 72. Premier was given until July 14, 2023, to provide an explanation to the Court. *Id.* Premier was warned, "Failure to comply with this order will result in a recommendation to the district judge to dismiss the claims against the third-party defendants." *Id.*

### a. Premier's Response to the Second Order to Show Cause

On July 14, 2023, Premier responded to the second Order to Show Cause. Doc. 73. Regarding the failure to respond to the first Order to Show Cause, Premier explains:

> Once the Court's Order was issued, [Premier's] counsel took actions to identify whether the service of process on Global Ministries International, its President, and its Chief Pilot was proper and whether there was indication in the subsequent filings that Counterclaim Defendants had accepted service on behalf to the President and Chief Pilot both as employees of the company as well as individually. And, while the review was not completed prior to the deadline issued by the Court, there was no bad faith but rather the intention of thoroughly responding to the Court's Order.

*Id.* at 4. Premier then states that it has "no justification for not requesting additional time" to respond to the first Order to Show Cause. *Id.* at 5. Notably, the Court also engaged in this review of the docket to verify whether Mr. Gates and Mr. Greenlaw had been properly served. The Court's analysis took less than an afternoon.

Regarding its failure to serve Mr. Gates and Mr. Greenlaw, Premier concedes that they should be dismissed in their individual capacities for failure to serve. *Id.* But Premier argues that there is good cause to extend the deadline to serve Mr. Gates and Mr. Greenlaw in their capacities as employees of Gospel Ministries. *Id.* at 5–6. Premier asserts that the attorneys for Gospel Ministries are actually representing Mr. Gates and Mr. Greenlaw in this action, even though the attorneys claim they are not. Thus, Premier argues that service on the Gospel Ministries attorneys was service on Mr. Gates and Mr. Greenlaw. *Id.*

Gospel Ministries filed a memorandum in opposition to Premier's response to the second Order to Show Cause. Doc. 74. Therein, Gospel Ministries correctly notes that Premier's response to the second Order to Show Cause has no basis in law. *Id.*

### b. Legal Standard

Federal Rule of Civil Procedure 4(m) provides, in part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

If a party shows "good cause" for its failure to serve, the party is entitled to an extension of time to serve. FED. R. CIV. P. 4(m). But if a party fails to show good cause, the Court may dismiss the action without prejudice. *Id.* Notably, good cause is also the standard for an extension of scheduling order deadlines under Rule 16(b), as discussed above.

To demonstrate good cause under Rule 4(m), a party "must show meticulous efforts to comply with the rule." *In re Kirkland*, 86 F.3d 172, 176 (10th Cir. 1996). Ignorance or mistake of law is not "good cause" for failing to serve. *Id.* Similarly, actual notice of a lawsuit does not satisfy Rule 4(m). *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1439 (10th Cir. 1994). Service upon a party's attorney is also not sufficient under Rule 4 unless a client has authorized the attorney to accept service. *See, e.g.*, *United States v. 51 Pieces of Real Property Roswell, New Mexico*, 17 F.3d 1306, 1313 (10th Cir. 1994) (quoting *Ransom v. Brennan*, 437 F.2d 513, 518 (5th Cir. 1971)) ("[S]ervice of process is not effectual on an attorney solely by reason of his capacity as an attorney.").

### c. Premier has not shown good cause for failing to serve the third-party defendants.

Premier has not shown good cause for failing to serve Mr. Gates and Mr. Greenlaw. Premier's sole argument for why the service deadline should be extended is that it believes that

15

the attorneys for Gospel Ministries represent Mr. Gates and Mr. Greenlaw in this matter. As noted, Gospel Ministries' attorneys have consistently maintained that they do not. Doc. 13 at 2 n.1; Doc. 58 at 2 n.1; Doc. 74 at 2.

Assuming, for argument's sake, that Gospel Ministries' attorneys do represent Mr. Gates and Mr. Greenlaw in this matter, Premier would still not be excused from failing to serve them. Serving a complaint on a party's attorney does not satisfy Rule 4 unless the party has authorized the attorney to accept service on their behalf. *51 Pieces of Real Property Roswell*, 17 F.3d at 1313. In this case, Premier does not argue nor is there evidence that Mr. Gates and Mr. Greenlaw have authorized Gospel Ministries' attorneys to accept service on their behalf. Even if the Gospel Ministries attorneys represented the third-party defendants, service has not been perfected against Mr. Gates and Mr. Greenlaw.

Premier's distinction between claims against Mr. Gates and Mr. Greenlaw in their individual capacities versus their capacities as employees has no basis in its original complaint, proposed amended complaint, or law. Neither the original complaint nor the proposed amended complaint makes a distinction between the third-party defendants' status as individuals or alleged employees. Nor does Premier cite any case law supporting the idea that service on an employer's attorney is *per se* service on the employee.

Premier fails to show good cause for failing to serve the third-party defendants, Mr. Gates and Mr. Greenlaw. *See also supra* section III.b. (discussing Premier's failure to show good cause for its delays).

    **d.**     **Gospel Ministries' attorneys do not represent the third-party defendants.**

In the interest of completeness, I now turn to Premier's claim that the Gospel Ministries' attorneys actually represent the third-party defendants. I find that Gospel Ministries attorneys do

not represent Mr. Gates and Mr. Greenlaw.

Premier makes four arguments as to why the Gospel Ministries attorneys represent Mr. Gates and Mr. Greenlaw. All four arguments are without merit.

First, Premier argues, "[a]s an employer [Gospel Ministries] has an obligation to defend its employee[s]," Mr. Gates and Mr. Greenlaw. Doc. 73 at 5. In support, Premier cites just one case: *Great Plains Mut. Ins. Co. v. Northwestern Nat. Cas. Co.*—an unpublished case regarding an insurance company's duty to defend a policyholder's employee. 113 F.3d 1246 (10th Cir. 1997) (unpublished table decision). As Gospel Ministries notes, *Great Plains* does not support the assertion that employers must represent their employees when they are sued relating to their jobs. Doc. 74 at 3. Gospel Ministries further asserts that "such a premise would cause significant ethical issues with respect to conflicts of interest and could severely impede an attorney's ability to represent either party." *Id.* Indeed, employers do not automatically represent their employees in actions against them. *See, e.g.*, *Innes v. Howell Corp.*, 76 F.3d 702, 712 (6th Cir. 1996) ("The law is generally settled that an attorney for a corporation does not automatically represent the corporation's constituents in their individual capacities, even on the same matters."); *Pena v. Greffet*, 110 F. Supp. 3d 1103, 1105 (D.N.M. June 17, 2015); *Lomas v. Maxim Healthcare Servs.*, No. CV 08-418-TUC-JMR, 2009 WL 10708531, at *3 (D. Ariz. July 21, 2009).

Second, Premier claims that service on Gospel Ministries is service on its employees because Gospel Ministries is being sued for vicarious liability. Doc. 73 at 6. Gospel Ministries asserts that Premier "provide[s] no support justifying [its] leap from an employer potentially being liable for an employee's actions, to an employer's counsel necessarily representing employees." Doc. 74 at 3. Gospel Ministries is correct. Simply because an organization is sued under a theory of vicarious liability, does not mean that the attorneys for that organization

17

automatically represent the employees or are authorized to accept service on the employee's behalf.

Third, Premier argues that because the attorneys for Gospel Ministries have referred to Mr. Gates and Mr. Greenlaw by their first names, demonstrating a "close relationship," the attorneys must represent the two. Doc. 73 at 6. Mere "familiarity," as Premier puts it, does not establish an attorney-client relationship. *See id.* Premier offers no legal support for this argument—most likely because there is none.

Fourth, Premier argues that its theory that Gospel Ministries represents Mr. Gates and Mr. Greenlaw is supported by the fact that Gospel Ministries noted that the two have not been served in its response to the motion to amend. *Id.* Premier reasons that Gospel Ministries would not have standing to make such an assertion if it did not represent the pair. *Id.* However, a party does not need standing to note a fact on the record regarding another party. Gospel Ministries' clarification that the third-party defendants have not been served is not evidence that they represent those third-party defendants.

Premier fails to prove that the Gospel Ministries' attorneys represent Mr. Gates and Mr. Greenlaw.

      e.      **Premier's Rule 15 arguments are misplaced**.

Next, Premier argues that "justice so requires" the Court to extend the service deadline, quoting and citing Rule 15. *Id.* at 7–8. As discussed above, Rule 15 applies to amendments of pleadings—not extensions of time for service. Premier's argument that Rule 15 requires that it be granted additional time to serve the third-party defendants is unfounded.

Premier asserts that "[b]oth parties agreed that following discovery and review by [Premier's] expert that additional parties should be added to the litigation. In that regard, it is

likely that [Kyle Kennedy and NW Aerotech], should the Court grant [Premier's] motion to amend, will file counterclaims against Gates and Greenlaw." Doc. 73 at 6. Seemingly, Premier is arguing that—because Mr. Kennedy and NW Aerotech would have potential cross claims against Mr. Gates and Mr. Greenlaw—Premier's failure to serve Mr. Gates and Mr. Greenlaw is excused. This argument is a *non sequitur*. The possibility of a crossclaim between third-party defendants does not have any bearing on a third-party plaintiff's failure to serve. Further, as discussed above, I recommend that Premier's motion to amend be denied.

Finally, Premier blames the delay in this case on Gospel Ministries. Doc. 73 at 7. It claims that Gospel Ministries "has been the major proponent in extending the discovery and expert disclosure deadlines in this case." *Id.* However, Premier's failure to serve third-party defendants for a year and nine months is wholly unrelated to Gospel Ministries' alleged eight-month discovery delay.

Premier fails to show good cause for failing to serve third-party defendants Mr. Gates and Mr. Greenlaw. As such, I recommend that the Court dismiss both parties.

**V.     Recommendation**

I find that Premier fails to show good cause to amend the pleadings after the scheduling order deadline has passed. Therefore, I recommend that the Court DENY Premier's Motion to Amend Its Pleadings to Add Cross Claims (Doc. 55). I also find that Premier fails to show good cause for failing to timely serve third-party defendants Mr. Gates and Mr. Greenlaw. As such, I recommend the Court DISMISS both Mr. Gates and Mr. Greenlaw without prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id.* **In other words, if no objections are filed, no appellate review will be allowed.**

_____
JENNIFER M. ROZZONI
United States Magistrate Judge